1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MATTHEW WRIGHT,

                        Plaintiff,

        v.

STATE OF WASHINGTON,
WASHINGTON DEPARTMENT OF
CORRECTIONS, WASHINGTON STATE
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, and ELIZABETH
HAINLINE,

                        Defendants.

CASE NO. 2:19-cv-01633-RSM-BAT

**REPORT AND
RECOMMENDATION**

9
10
11
12
13
14
15

        Defendants State of Washington, Washington Department of Corrections ("DOC"), and

16  Elizabeth Hainline move to dismiss the claims against them pursuant to Federal Rule of Civil

17  Procedure 12(b)(6). Dkt. 22. Plaintiff opposes the motion. Dkt. 23. After careful consideration,

18  the undersigned recommends that the motion to dismiss be granted.

19                                    JUDICIAL NOTICE

20          Although courts are usually limited to considering allegations made in the complaint on a

21  motion to dismiss, courts may take judicial notice of court filings and other matters of public

22  record without converting a motion to dismiss into a motion for summary judgment. *See Barron*

23  *v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500,

504 (9th Cir. 1986). Defendants request that the Court take judicial notice of the following three

1    state court documents without converting the present motion into a motion for summary

2    judgment: (1) Petitioner's Motion for Order Selecting Guardian ad Litem filed in *In re Matthew*

3    *Wright and Sara Wright,* Snohomish County Cause No. 16-3-00682-7; (2) Order Appointing

4    Guardian Ad Litem (David Hodges) entered in *In re Matthew Wright and Sara Wright*,

5    Snohomish County Cause No. 16-3-00682-7; and (3) Order Appointing Guardian ad Litem

6    (David Hodges) entered in *In re Theodora and Sarah and Matthew Wright*, Snohomish County

7    Cause No. 17-3-02405-31. Dkt. 17, Declaration of Elizabeth Hainline, Exhibits 1-3.

8       Plaintiff objects to the Court taking judicial notice of these documents because they are

9    not authenticated and not certified. Dkt. 23, at 8. These documents, provided with the sworn

10    declaration of Defendant Hainline, bear a state court caption and the filing stamp of a state court

11    and are the type of court filings and matters of public records of which the Court may take

12    judicial notice. *See*, *e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir.

13    2006). The Court also takes judicial notice of court filings in a related case in this District. *See*

14    *Wright v. Wright* Case 2:18-cv-00927-RAJ.

15                  <u>FACTS ALLEGED</u>

16       Plaintiff Matthew Wright, who is currently an inmate at the Monroe Correctional

17    Complex, filed this lawsuit in state court raising various claims related to the release of criminal

18    history information to David Hodges, the guardian ad litem ("GAL") appointed by the

19    Snohomish County Superior Court in Case No. 16-3-00682-7, to investigate and report on issues

20    affecting visitation with Plaintiff's minor children. Plaintiff's original complaint named

21    Washington State, two state agencies, and Elizabeth Hainline, a DOC employee, as defendants.

22    The DOC Defendants removed the case to federal court. After removal, Defendant Hainline filed

23

REPORT AND RECOMMENDATION - 2

a motion to dismiss raising various issues with Plaintiff's initial complaint. Dkt. 16. In response, Plaintiff amended his complaint to add new claims and defendants. Dkt. 18.

Plaintiff has two minor children with Sarah Wright. Dkt. 18, at ¶ 20. From 2012 to May 2017, Plaintiff was approved for trailer visits with his children and an escort, his sister Theodora Wright. *Id.* at ¶ 21. In March 2016, Plaintiff filed for divorce from Sarah and the family court issued a parenting plan allowing Plaintiff up to six visits per month with his minor children, including one overnight visit per month. *Id.* at ¶ 24. Plaintiff alleges that over the next several months, Sarah threatened, extorted, and fabricated charges of child abuse to keep him from seeing the children. Plaintiff filed a police report reporting her behavior. The police, DSHS, and the DOC began investigations regarding Plaintiff's visitation with his children. *Id.*, at ¶¶ 23-28; *see also, ¶¶* 34-36 (CPS investigation following report by Sarah's sister that Plaintiff was taking naked baths with his children during their overnight trailer visits).

In November 2016, at the request of Plaintiff and Sarah, the Snohomish County Superior Court appointed David Hodges as GAL. Plaintiff does not dispute that a Washington state court appointed a GAL at his request. *See* Dkt. 17-1, at 2-3 (motion requesting appointment of GAL); *Id.*, at 7-15 (orders appointing GAL). The GAL was appointed under Washington State law to investigate and make recommendations about the children's best interests. RCW 26.12.175; ECF No. 17-1, at 7 (finding that appointment of a GAL is in the best interests of the children); ECF No. 17-1, at 12 (same).[1]

---

[1] *See* Dkt. 84 in Case 2:18-cv-00927-RAJ, for a detailed recitation of the facts relating to Plaintiff's conviction, marriage to Sarah Wright, Plaintiff's supervised visitation history, concerns raised during Plaintiff's extended family visits ("EFVs") with the children, DSHS and criminal investigations, and investigation by Correctional Program Manager Michael Hathaway resulting in a decision by Superintendent Jackson that Plaintiff be allowed regular visitation with his children with a professional escort at all times and that his EFVs with his children be suspended permanently.

REPORT AND RECOMMENDATION - 3

1    Plaintiff alleges that Defendant Hainline, as Plaintiff's visitation coordinator, released

2    "confidential information about [his] parental visitation rights," his prison history, and

3    information from DOC Offender Management Network ("OMNI") files to the court-appointed

4    GAL David Hodges, without his consent and for the sole purpose of assisting Plaintiff's ex-wife

5    while harming him. Dkt. 18 (Amended Complaint), at ¶ 37. Plaintiff does not identify the nature

6    of the "confidential information" he claims was wrongfully released.

7    Plaintiff further alleges David Hodges "harbored animosity against [Plaintiff] for many

8    years," wrote his GAL report to prohibit Plaintiff from having contact with his children, and that

9    Defendant Hainline contributed edits to the GAL report with the intent that Plaintiff be deprived

10    of "his constitutional right to interact with his children." *Id.* Plaintiff does not allege the nature

11    of the edits to the GAL report he claims were wrongfully added.

12    Based on the foregoing alleged conduct, Plaintiff contends Defendant Hainline violated

13    his due process, the Privacy Act of 1974, tortuously interfered with his parent-child relationship,

14    invaded his privacy (by false light and by publication), violated the Washington State Criminal

15    Records Privacy Act (CRPA), and constituted negligence.

16    Defendant Hainline seeks dismissal of all claims against her. DOC and the State of

17    Washington seek dismissal of the constitutional claims against them. Because DOC and the State

18    of Washington seek only partial dismissal, they have also filed an Answer.

19                                    STANDARD OF REVIEW

20    To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient

21    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

22    *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

23    (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as

REPORT AND RECOMMENDATION - 4

true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. Of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991). The Court will dismiss the complaint or any claim in it without leave to amend only if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir.2000)) (en banc).

<u>DISCUSSION</u>

A.    <u>Constitutional Claims – Defendants DOC and State of Washington</u>

Plaintiff concedes that dismissal of his constitutional claims against the DOC and the State of Washington is appropriate, as neither of these defendants is a person under Section 1983. Dkt. 23 at 3. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) (A state agency and state officials acting in their official capacity are not persons under § 1983).

Accordingly, it is recommended that DOC and the State of Washington's motion to dismiss be granted and all of Plaintiff's constitutional claims against them be dismissed with prejudice.

REPORT AND RECOMMENDATION - 5

1    B.    <u>Privacy Act Claim – Defendant Hainline</u>

2        Plaintiff alleges that Defendant Hainline violated 5 U.S.C. § 552a(b) ("Privacy Act of

3    1974"), which prohibits government agencies from disclosing any records kept in a system of

4    records to other persons or agencies without the prior written consent of the individual to whom

5    the records pertain. Dkt. 18 at 12. Plaintiff alleges that he never signed any form consenting to

6    the release of his criminal and offender records by Defendant Hainline to the GAL. *Id.*

7        Whether Plaintiff "consented" to the release of this information to the GAL is addressed

8    below. As to Plaintiff's Privacy Act claim, the issue is whether Plaintiff can sue an employee of

9    the DOC under the remedial provision of the Privacy Act. *See* Dkt. 18, at ¶ 12; *Dittman v.*

10    *California*, 191 F.3d 1020, 1026 (9th Cir. 1999). The undersigned concludes that he cannot.

11        The Privacy Act gives agencies detailed instructions for managing their records and

12    provides various sorts of civil relief to persons aggrieved by the Government's failure to comply

13    with the Act's requirements. *Doe v. Chao*, 540 U.S. 614, 618 (2004). Subsection 552a(g)(1)(D),

14    which is described as the Privacy Act's "catchall" provision, *see Cacho v. Chertoff*, No. 06–

15    00292, 2006 WL 3422548, at *4 (D.D.C. Nov. 28, 2006), provides a civil cause of action

16    whenever a government agency "fails to comply with any other provision of this section, or any

17    rule promulgated thereunder, in such a way as to have an adverse effect on an individual."

18    U.S.C. § 552a(g)(1)(D). Thus, to state a claim for relief under the subsection, which works in

19    conjunction with § 552a(g)(4), a plaintiff must establish that (1) the *agency* violated another

20    provision of the Privacy Act, (2) the violation was intentional or willful, and (3) the violation had

21    an adverse effect on the plaintiff. *See Paige v. DEA*, 665 F.3d 1355, 1358–59 (D.C.Cir.2012)

22    (citing 5 U.S.C. §§ 552a(g)(1)(D) & 552a(g)(4))(emphasis added).

23

REPORT AND RECOMMENDATION - 6

1    Only federal agencies, not individuals, are the proper defendants for a Privacy Act cause

2    of action. *See* 5 U.S.C. § 552a(g)(1) (stating that an "individual may bring a civil action against

3    the agency"). "The private right of civil action created by the Privacy Act... 'is specifically

4    limited to actions against agencies of the United States Government. The civil remedy provisions

5    of the statute do not apply against private individuals, state agencies, private entities, or state and

6    local officials.'" *Dittman,* 191 F.3d at 1026 (quoting *Unt v. Aerospace Corp.*, 765 F.2d 1440,

7    1447 (9th Cir.1985) (citations omitted)); (citing *St. Michael's Convalescent Hosp. v. California*,

8    643 F.2d 1369, 1373 (9th Cir.1981) (holding that the Privacy Act provides no private right of

9    action against "state agencies or bodies")); *see also Earle v. Holder*, 815 F.Supp.2d 176, 180

10   (D.D.C.2011) ( "[T]he Privacy Act does not authorize claims against individuals.)

11   Plaintiff apparently concedes that no private right of action against a state official exists

12   as he argues that Section 1983 may serve as a vehicle to redress violations of that statute.

13   Plaintiff cites to *Legal Servs. v. Arnett*, 114 F.3d 135, 138 (9th Cir. 1997), for the proposition that

14   "[i]t is well established that § 1983 provides a private right of action for violations of federal

15   statutes in some instances." Aside from this very broad statement, Plaintiff provides no support

16   for his contention that he can sue Defendant Hainline for a violation of the statute *via* Section

17   1983.

18   In fact, the Supreme Court has "reject[ed] the notion that [its] cases permit anything short

19   of an unambiguously conferred right to support a cause of action brought under § 1983."

20   *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). It is not

21   sufficient for § 1983 to assert "interests" or "benefits" under a statute; it is only "rights ... that

22   may be enforced under the authority of that section." *Id*. To create a federal right, a statute's

23   "text must be phrased in terms of the persons benefited ... with an unmistakable focus on the

benefited class." *Id*. at 284 (internal quotation marks omitted). And even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent "to create not just a private right but also a private *remedy*." *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (emphases added). The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983. *Id.* at 290, 121 S.Ct. 1511. Here, there is an express, private means of redress in the Privacy Act, but it is specifically limited to actions against agencies of the United States Government – not private individuals, state agencies, private entities, or state and local officials.'" *Dittman,* 191 F.3d at 1026

Plaintiff provides no authority to the contrary to support his contention that Section 1983 provides an alternative vehicle of enforcement here. Accordingly, it is recommended that Defendant Hainline's motion to dismiss Plaintiff's Privacy Act claim be granted.

C.    <u>Invasion of Privacy Claim – Defendant Hainline</u>

Plaintiff claims that Defendant Hairline violated his right to privacy by secretly sharing information from his OMNI files (*i.e.* offender information and criminal history) with David Hodges, the court-appointed GAL. Dkt. 18, ¶ 37. Plaintiff alleges he never consented to the release of this information and was never asked to sign a form giving his consent to the release of this information. *Id.* Plaintiff sues for invasion of privacy by false light and/or by publication.

Defendant Hainline contends that (1) any invasion of privacy claim must be dismissed because Plaintiff consented to the release of the information and (2) Plaintiff has failed to state a plausible claim under either theory.

1.    <u>Consent to Disclosure of Information</u>

Under Washington law, consent to disclosure of information is a complete bar to an invasion of privacy claim. *See Adams v. King Cnty.*, 164 Wn.2d 640, 661-62, 192 P.3d 891 (2008) (dismissing claim based on consent); Restatement (Second) of Torts § 652F, comment b (1977) (Washington courts often look to the Second Restatement in determining the scope of invasion of privacy claims. *See*, *Adams*, *id.* at 164 Wn.2d at 661-62).

Plaintiff does not dispute that a Washington state court appointed a GAL at his request. *See* Dkt. 17-1, at 2-3 (motion requesting appointment of GAL); *Id.*, at 7-15 (orders appointing GAL). The GAL was appointed under Washington State law to investigate and make recommendations about the children's best interests. RCW 26.12.175; Dkt. 17-1, at 7 (finding that appointment of a GAL is in the best interests of the children); Dkt. 17-1, at 12 (same). The GAL was expressly given permission to have reasonable access to law enforcement agencies to obtain information that affects the children. The DOC is a law enforcement agency under Washington State law. *See McLean v. State, Dep't of Corr.*, 37 Wn. App. 255, 258, 680 P.2d 65 (1984). Plaintiff argues that the release of information was limited in a section of the order describing what the GAL's report was intended to recover. However, the orders appointing the GAL plainly state that the parties signing the Order are giving permission to the agencies and professionals listed (*i.e.*, child care providers, physical and mental health care providers, schools and other educational institutions, law enforcement agencies, Child Protective Services, and Department of Social and Health Services) "to share information about themselves and their children with the GAL." *See, e.g.,* Dkt. 17-1, at p. 9, ¶¶ 7-8.

The DOC is a law enforcement agency and it had information relevant to Plaintiff and his children, *i.e.* his criminal background and offender information). Having moved for and obtained

1    a GAL, Plaintiff cannot now reasonably claim an invasion of privacy claim after Defendant

2    Hainline shared this information with the GAL.

3         Even assuming Plaintiff's agreement to the appointment of a GAL does not bar his

4    invasion of privacy claim, Plaintiff has otherwise failed to state a viable claim of invasion of

5    privacy either by false light or by publication.

6         2.    <u>False Light Theory</u>

7         A plausible claim for invasion of privacy by false light requires that (1) a defendant

8    published a statement that placed a person in a false light; (2) the statement would be highly

9    offensive; and (3) the defendant knew or recklessly disregarded the falsity of the publication and

10   the false light in which it would place the plaintiff. *See Seaquist v. Caldier*, 8 Wn. App. 2d 556,

11   564, 438 P.3d 606 (2019).

12        Plaintiff alleges that "confidential information about [his] parental visitation rights and

13   his history at Twin Rivers, including information from his OMNI files" were disclosed. Dkt. 18,

14   at 6. This general statement is not sufficient to show that the information disclosed placed

15   Plaintiff in a false light or that the disclosure would be highly offensive to a reasonable person.

16   Plaintiff does not allege that any of the information was false or that Defendant Hainline knew

17   the information was false or recklessly disregarded the truth of the information.

18        In his response to the motion to dismiss, Plaintiff asserts:

19        By sharing his confidential, albeit inaccurate, criminal history information and
20        prison files, Defendant Hainline led Guardian ad Litem ("GAL") David Hodges to
          believe that Wright was in prison for raping and killing a child. Wright's Offender
          Management Network Information (OMNI) profile with the Washington DOC
21        contains misleading information about the crimes that led to his conviction. It
          falsely represents him as a prisoner incarcerated for raping and murdering a minor
22        to ensure their silence. This is an offensive representation that would shock any
          reasonable person overseeing the safety of Wright's children. These are not the
23        true facts of Wright's incarceration, and Wright has consistently complained

about this egregious discrepancy to his counselor and other prison officials. The
statements and information in the OMNI profile have never been corrected.

Dkt. 23, at 4. These new allegations are not contained in Plaintiff's Amended Complaint. *See*
Dkt. 18. Additionally, court records reflect that Plaintiff was convicted in 1994 on charges of
murder of a child in the first degree and rape of a child in the third degree. *See* Dkt. 84 (Report
and Recommendation) in Case 2:18-cv-00927-RAJ (with facts regarding Plaintiff's dissolution
and investigations into Plaintiff's visitation with his children); *see also* Dkt. 57-1, Declaration of
Matthew Wright, at 2 (describing rape of a 14-year old and first-degree murder of "another
girl"). It is unclear how killing one child and raping another child (as opposed to raping and
killing the same child) would be a less offensive representation that would not shock any
reasonable person overseeing the safety of Plaintiff's children. The fact remains that Plaintiff is a
convicted murderer and sex offender.

Thus, Plaintiff's false light claim against Defendant Hairline fails because (1) the alleged
undercounting of victims cannot be considered highly offensive and (2) he has failed to plausibly
allege that Defendant Hairline recklessly disregarded the truth or falsity of the information. In
fact, he confirms that the information is contained in his DOC records, Defendant Hainline
shared this information with the GAL, who was appointed under Washington state law to
investigate and make recommendations about the children's best interests (*see* RCW 26.12.175;
Dkt. 17-1, at 7 (finding that appointment of a GAL is in the best interests of the children); Dkt.
17-1, at 12 (same)); and Plaintiff's complaints about any alleged inaccuracies of his criminal
record were made to his counselor and "other prison officials" – not to Defendant Hairline.

Because Plaintiff has failed to state a plausible false light claim, Defendant Hainline's
motion to dismiss this claim should be granted.

3.     <u>Publication of Private Information</u>

This theory of invasion of privacy requires a person to show (1) defendant gave publicity to a matter concerning the private life of another (2) that would be highly offensive to a reasonable person; and (3) is not of legitimate concern to the public. *Reid v. Pierce Cnty*., 136 Wn.2d 195, 205, 961 P.2d 333 (1998). In this context, publication means communication to the public at large so that the information is substantially certain to become public knowledge. *See Fisher v. State ex rel. Dep't of Health*, 125 Wn. App. 869, 880-81, 106 P.3d 836 (2005). When evaluating such claims, a plaintiff must show that the extent of any dissemination outweighed his privacy interest.

As discussed in *Fisher*, the claim can be plausible if "the highly offensive nature of the material [outweighs] the limited scope of publicity. *Id*. at 880-81. Plaintiff argues that even though Defendant Hainline only shared the "highly offensive information with one person," that information was shared with others, resulting in a grave deprivation in Plaintiff's relationship with his children.

Plaintiff does not explain how information about his criminal and visitation history contained in DOC's database is a matter concerning his private life nor does he identify what "highly offensive information" was wrongfully shared. Plaintiff does not coherently explain how the information that allegedly undercounted his victims was so highly offensive that it outweighed the limited sharing of information with the GAL, *i.e.*, why the disclosure that he raped one child and killed another child would be any less likely to result in a curtailment of his trailer visits with his children. Moreover, Plaintiff fails to explain how his criminal background and history of visits with his children is not of legitimate concern to the GAL, who was appointed for the very purpose of investigating the best interests of the children.

1    Because Plaintiff has failed to state a plausible invasion of privacy by publication claim,

2    Defendant Hainline's motion to dismiss this claim should be granted.

3    D.    <u>Washington Criminal Records Privacy Act – Defendant Hainline</u>

4    The Washington Criminal Records Privacy Act ("CRPA") is a comprehensive scheme

5    that puts limitations on the release of "criminal history record information" as defined by RCW

6    10.97.030. However, CRPA states that "[c]onviction records may be disseminated without

7    restriction." RCW 10.97.050(1). A conviction record is "criminal history record information

8    relating to an incident which has led to a conviction or other disposition adverse to the subject."

9    RCW 10.97.030(3).

10    Plaintiff asserts that Defendant Hainline violated the CRPA but he fails to allege the

11    nature of the information violating the CRPA. He references his "visitation history" but such

12    information would likely not qualify as criminal history record information and therefore, its

13    dissemination would not be governed by the CRPA.

14    Plaintiff also asserts that Defendant Hainline disseminated information without first

15    obtaining permission from the Washington State Patrol (WSP). This allegation is not contained

16    in the Amended Complaint. Moreover, the disclosures made by Defendant Hainline (as they are

17    described in the Amended Complaint) likely fall within two exceptions to the statute. First, the

18    orders appointing the GAL did not require DOC to go to WSP prior to disseminating the

19    information in DOC's files. Second, because the information disclosed was part of DOC's

20    records, "[t]he full information requested and to be disseminated relates to specific facts or

21    incidents which are within the direct knowledge of the agency which disseminates the

22    information." RCW 10.97.040(2).

23

1    Based on the vague allegations contained in the Amended Complaint, Plaintiff has failed

2   to state a plausible claim for a violation of the CRPA and therefore, Defendant Hainline's motion

3   to dismiss this claim should be granted.

4   E.    Due Process

5    In his Amended Complaint, Plaintiff appears to allege that he has a liberty interest in his

6   private information, in parenting his children, and in being secure in his person. Dkt. 18, at 11. In

7   his response, Plaintiff asserts that, by starting a chain of events that led to the termination of his

8   visitation with his children, Defendant Hainline "interfered with this liberty interest when she

9   shared inaccurate and confidential information about him without his consent to another party (or

10  parties) in a position to effect the deprivation based on the incorrect information," and she did

11  this without providing Plaintiff the opportunity to correct the information before it was shared or

12  by calling for an investigation into his alleged conduct. Dkt. 23 at 10.

13    The Fourteenth Amendment protects against governmental deprivations of "life, liberty,

14  or property" without due process of law. U.S. Const. amend. XIV § 1. The procedural guarantees

15  of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally

16  protected liberty or property interest is at stake. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

17  Liberty interests protected by the Fourteenth Amendment may arise from either the Due Process

18  Clause itself or from state law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Liberty interests

19  created under state law are generally limited to freedom from restraint which imposes an

20  "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*

21  *v. Conner*, 515 U.S. 472, 483-84 (1995).

22    To succeed on a due process claim, an individual must show that he was deprived of a

23  protected liberty or property interest. *See Bd. of Regents of State College v. Roth*, 408 U.S. 564,

570-71 (1972). A procedural due process claim requires a protected liberty interest, a deprivation of that interest, and a lack of process. *See Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Vague and conclusory allegations of official participation in a violation is not sufficient to support a claim under § 1983. *Ivey v. Bd. of Regents*, 673 F.2d 266 (9th Cir. 1982).

Plaintiff claims, in a vague and conclusory manner, that Defendant Hainline's actions resulted in termination of his visits with his children. First, this allegation is questionable as other information suggests his visits were not terminated. *See* Dkt. 84 in Case 2:18-cv-00927-RAJ. Second, it is well established that prisoners have no due process right while incarcerated to either contact or conjugal visits. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460-61 (1989) (holding that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause"); *Block v. Rutherford*, 468 U.S. 576, 589 (1984) (holding that "the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility"); *Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010) (finding no clearly established right to visitation); *Toussaint v, McCarthy*, 801 F.2d 1080, 1113-14 (9th Cir. 1986) (abrogated in part on other grounds by *Sandin*, 515 U.S. at 483-84) (noting that denial of contact visits "is part of the penalty that criminals pay for their offenses against society"); *see also*, *Bazetta v, McGinnis*, 430 F.3d 795, 804-05 (6th Cir. 2005) (finding no circuit court case that recognized an implicit due process right to prison visitation); *Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir. 1994) (finding no protected liberty interest in conjugal visits); *Woody v. Zatecky*, 594 Fed. App'x 311, 312 (7th Cir. 2015) (noting that that courts have held that loss of visitation privileges is not atypical and significant hardship); *Wirsching v. Colorado*,

360 F.3d 1191, 1200-02 (10th Cir. 2004) (upholding ban on sex offender's ability to visit with

his own children even though they were not victims)/

While Plaintiff does have a liberty interest as a parent (*see Troxel v. Granville*, 530 U.S.

57 (2000)), he fails to plausibly allege facts to support his claim that his parenting rights were

hindered *because* Defendant Hainline gave the GAL information contained in Plaintiff's DOC

file. In fact, although Plaintiff broadly alleges that Defendant Hainline's conduct resulted in

termination of his visitation rights, he later alleges that the visits were merely temporarily

suspended, pending investigations by the DOC, DSHS, and police into allegations of sexual

misconduct or abuse by Plaintiff during overnight visits with the children. *See* Dkt. 18, pp. 8-9.

Although Plaintiff denies the allegations of sexual misconduct or abuse, he does not plausibly

allege how the release of his prison and conviction records led to the temporary termination of

his visitation or termination of the overnight visits. In fact, he alleges in his Amended Complaint

that it was DSHS Social Service Specialist Diane Carmel, who conspired with his ex-wife, DOC

Custody Programming Manager Michael Hathaway, and David Hodges, the court-appointed

GAL, "to deprive Wright of his constitutional right to see and parent his children." Dkt. 18, p. 8.

Because Plaintiff does not allege the deprivation of a protected liberty interest by

Defendant Hainline, Defendant Hainline is entitled to dismissal of this claim.

F.    Negligence – Defendant Hainline

Negligence is the failure to exercise ordinary care. To establish a cause of action for

negligence, a plaintiff must prove each of the following elements by a preponderance of the

evidence: (1) the existence of a duty owed to the plaintiff by the defendant; (2) breach of that

duty; (3) injury resulting from the breach of duty; and 4) proximate cause between the breach of

duty and the injury. *See e.g.*, *Hutchins v. 1001 Fourth Avenue Associates*, 116 Wn.2d 217, 802

P.2d 1360 (1991). Plaintiff asserts that all Defendants "were (sic) in their treatment of plaintiff and his right to parent and failed to investigate allegations of wrongdoing, instead preferring to simply interfere with the parent child relationship." Dkt. 18, at ¶ 79.

Plaintiff's claim for negligence related to visitation with his children fails because he makes no allegation that Defendant Hainline was personally involved in any of the decisions related to the visitation that he is challenging in this lawsuit. He has also failed to plausibly allege a duty on the part of Defendant Hainline to provide him with visitation with his children.

Plaintiff does not appear to contest the dismissal of his negligence claim against Defendant Hainline related to visitation. Instead, he argues alternatively, that Defendant Hainline's duty arose from internal DOC policies (DOC Policy 280.500 "Records Management of Official Offender Files" and DOC 800.100 "Ethics") and RCW 42.52.050 (prohibiting a state employee from disclosing confidential information to any person not entitled or authorized to receive the information). Application of these policies and ethics rules, however, depends on a finding that the GAL is an "unauthorized individual," but Plaintiff provides no basis for that argument – particularly, with valid court orders empowering the GAL to review and investigate Plaintiff's background in determining the best interests of the children. Additionally, internal policies do not have the force of law in Washington State and cannot be the basis for a cognizable duty. *See, e.g.*, *Joyce v. State, Dep't of Corr.*, 155 Wn.2d 306, 323, 119 P.3d 825 (2005). As such, these DOC policies do not create a duty upon which Plaintiff can base a negligence claim.

And finally, Plaintiff provides no authority to suggest that the Ethics in Public Service Act creates an actionable duty. In fact, unpublished case law strongly suggests otherwise. *See Oreskovich v. Eymann*, 129 Wn. App. 1032, 2005 WL 2271885, at *3 (2005) (unpublished)

("[T]he ethics in public service act does not create a private cause of action for individuals injured by ethics violations.); *Jeckle v. Wash. State Attorney General's Office*, 128 Wn. App. 1015, 2005 WL 1502047, at *4 (2005) ("[T]he Ethics in Public Service Act creates no separate duty to private individuals other than the public duty owed to all citizens by the government in the execution of its offices…It is, then, also insufficient to support Dr. Jeckle's negligence claim.").

Moreover, the Ethics in Public Service has its own remedial provision. *See* RCW 42.52.460 (describing citizens actions); *see also Smith v. Penrose*, CV-06-0148-LRS, 2007 WL 2417086, at *3 (E.D. Wash. 2007) (dismissing claim premised on the Ethics in Public Service Act). And, Plaintiff has provided no basis for the Court to conclude that his criminal and visitation history is considered "confidential information" under RCW 42.52.050; *see also*, *Corey v. Pierce Cnty,* 154 Wn. App. 752, 765, 225 P.3d 367 (2010) (there is no legal duty implicated by the disclosure of information because there is no cause of action in Washington for negligent dissemination of information, even when the information is unsubstantiated.)

Additionally, and to the extent Plaintiff is claiming that Defendant Hainline was negligent in interfering with a parent-child relationship, that claim must also be dismissed as "[t]he tort of interference with a parent-child relationship cannot be committed accidentally or negligently." *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 766, 320 P.3d 77 (2013).

Based on the foregoing, the undersigned recommends that Defendant Hainline's motion to dismiss Plaintiff's negligence claims be granted.

G.    <u>Malicious Interference with Parent-Child Relationship – Defendant Hainline</u>

The tort of alienation of affections of a child requires: (1) an existing family relationship; (2) a malicious interference with the relationship with a third person; (3) an intention of the part

of the third person that such interference result in the loss of affection or family association; (4) a causal connection between the third person's conduct and the loss of affection; and (5) resulting damages. *Babcock v. State by and Through DSHS*, 112 Wn.2d 83, 107-108, 768 P.2d 481 (1989).

Plaintiff claims that Defendant Hainline disseminated private information to the GAL with the intention of causing him to lose access to his children. This conclusory allegation gives no indication of what Defendant Hainline is supposed to have done other than that she released some kind of information or made some kind of statement that harmed Plaintiff. Moreover, as discussed in great detail already, the dissemination of information contained in Plaintiff's DOC files to a GAL who had a court order permitting him to get such information cannot be plausibly viewed as a malicious interference with the Plaintiff's parent-child relationship as it is that very relationship the GAL was ordered to investigate.

Nevertheless, Plaintiff argues that it was the dissemination of false information – leading the GAL to believe that he was convicted of raping and then killing a child to silence her instead of the true facts of his conviction (*i.e.*, that he raped one child and murdered a second child) – that led to the interference with his parent-child relationship. In both scenarios, Plaintiff is a convicted murderer and convicted sex offender. Thus, there is no factual basis from which the Court can reasonably conclude the existence of a causal connection between Defendant Hainline's dissemination of Plaintiff's conviction and visitation history (contained in DOC files) and the loss of affection between Plaintiff and his children. In fact, Plaintiff does not allege loss of affection and has alleged elsewhere in his Amended Complaint that visitation with his children was affected by various investigations led by the DOC, DSHS, and state law enforcement, into Plaintiff's behavior during overnight visits with his children.

1    Based on the foregoing, the Court recommends Defendant Hainline's motion to dismiss

2    Plaintiff's claim of tortious interference with his parent-child relationship be granted.

3                                    CONCLUSION

4    Plaintiff repeatedly argues that he should be allowed discovery before the Court

5    dismisses his claims against Defendant Hainline. However, at this stage of the litigation, if the

6    Court determines his claims are not legally sufficient, there is no reason to proceed to discovery.

7    Moreover, because Plaintiff's allegations against Defendant Hainline are related to her release of

8    information to the GAL, Plaintiff must have had some basis for making these allegations at the

9    time he filed his Amended Complaint and in fact, claims in his Amended Complaint that he was

10   injured by her conduct. Even when the Court considers Plaintiff's further explanation of his

11   claims as to the nature of the information he contends was private and harmfully released (*see*

12   Dkt. 22, Plaintiff's Response), the Court is unable to draw the reasonable inference that

13   Defendant Hainline is liable for the misconduct alleged. Thus, it is recommended that the claims

14   against Defendant Hainline be dismissed without further leave to amend.

15                               OBJECTIONS AND APPEAL

16   The undersigned recommends that the Court grant Defendants' motion to dismiss (Dkt.

17   22) with prejudice; dismiss all claims against Defendant Elizabeth Hainline, and the claims

18   against the State of Washington and Department of Corrections brought under 42 U.S.C. § 1983.

19   This Report and Recommendation is not an appealable order. Therefore, a notice of

20   appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

21   assigned District Judge enters a judgment in the case.

22   Objections, however, may be filed and served upon all parties no later than **April 13,**

23   **2020.** The Clerk should note the matter for **April 15, 2020**, as ready for the District Judge's

REPORT AND RECOMMENDATION - 20

consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages.  The failure to timely object may affect the right to appeal.

DATED this 20th day of March, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 21