UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW WRIGHT,

                        Plaintiff,

         v.

STATE OF WASHINGTON,
DEPARTMENT OF CORRECTIONS,
RON FREDERICKS, MICHAEL
HATHAWAY, TRACY SCHNEIDER,
TAMMY O'REILLY, AND MELVIN
HOPKINS,

                        Defendants.

CASE NO. 2:19-cv-01633-RSM-BAT

**REPORT AND
RECOMMENDATION**

Defendants State of Washington, Department of Corrections, Ron Fredericks, Michael Hathaway, Tracy Schneider, Tammy O'Reilly, and Melvin Hopkins, move for an order granting summary judgment and dismissing Plaintiff Matthew Wright's claims against them with prejudice pursuant to Fed. R. Civ. P. 56. Dkt. 46. Plaintiff opposes the motion. Dkt. 49. After careful consideration, the undersigned recommends that the motion be granted and Plaintiff's remaining claims be dismissed with prejudice.

SUMMARY OF CLAIMS

Plaintiff Matthew Wright, who is currently an inmate at the Monroe Correctional Complex ("MCC"), filed this lawsuit in state court. In his original complaint, Mr. Wright raised several claims related to the release of criminal history information to a guardian ad litem, who

REPORT AND RECOMMENDATION - 1

had been appointed in a Snohomish County Superior Court case to investigate and report on issues affecting visitation with Plaintiff's minor children. Plaintiff originally named Washington State, two state agencies, and Elizabeth Hainline, a DOC employee, as defendants. The DOC Defendants removed the case to federal court and thereafter, Defendant Hainline filed a motion to dismiss. Dkt. 16. In response, Plaintiff amended his complaint to add new defendants and new First Amendment claims regarding the rejection by the MCC mailroom of incoming mail. Dkt. 18.

On June 15, 2020, the Washington Department of Social and Health Services was dismissed pursuant to the parties' stipulation. Dkt. 38, 39. On July 8, 2020, the Court dismissed all claims against Defendant Elizabeth Hainline (due process, privacy act, tortious interference with parent-child relationship, invasion of privacy, records privacy, and negligence), and the constitutional claims (42 U.S.C. § 1983) against the State of Washington and Department. Dkt. 22, 43.

The State of Washington and Department, Ron Fredericks, Michael Hathaway, Tracy Schneider, Tammy O'Reilly, and Melvin Hopkins, move for an order granting summary judgment and dismissing all of Plaintiff Matthew Wright's remaining claims against them with prejudice pursuant to Fed. R. Civ. P. 56. Dkt. 46. Defendants address all of Mr. Wright's remaining claims under federal and state law, *i.e.*, (1) due process claim against Defendants O'Reilly, Frederick, Hopkins, Hathaway, and Schneider for alleged interference with Wright's right to be secure in his person and visitation; (2) negligence claim against DOC, the State of Washington, O'Reilly, Frederick, Hopkins, Hathaway, and Schneider for alleged interference right's parent-child relationship; (3) First Amendment claim against Defendants O'Reilly, Frederick, Hopkins, Hathaway, and Schneider for the rejection of his mail; and (4) respondeat

REPORT AND RECOMMENDATION - 2

1    superior claim against the State of Washington. Defendants ask for an order of dismissal, with a

2    specific finding that Plaintiff's claims are frivolous and malicious. *Id*.

3        In opposition, Mr. Wright addresses only his claim that his First Amendment rights were

4    violated when Defendants rejected his mail. Dkt. 49. Mr. Wright advises the Court that he is not

5    pursuing any claims related to visitation with his children against any of the remaining

6    defendants. *Id.*, p. 20.[1]

7        Thus, there remain only three issues for resolution, *i.e.*, (1) whether Mr. Wright

8    exhausted his administrative remedies (relating to his mail rejection claims); (2) whether

9    Defendants violated Mr. Wright's First Amendment rights by rejecting his incoming mail; and

10    (3) whether this action is frivolous and malicious. The resolution of these issues addresses all

11    remaining defendants and claims in this lawsuit.

12    **MOTION TO STRIKE**

13        Defendants move to strike portions of the declarations submitted by Mr. Wright (Dkt. 50)

14    and Roger Sime (Dkt. 52) as irrelevant or hearsay. The motion is granted in part.

15        Evidence that is conclusory cannot be relied upon in opposing a summary judgment

16    motion. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993*); see also Lujan v. National*

17    *Wildlife Federation*, 497 U.S. 871, 888 (1990) (the object of summary judgment "is not to

18    replace conclusory allegations of the complaint or answer with conclusory allegations of an

19    affidavit."). Hearsay that would be inadmissible at trial is similarly inadmissible to oppose a

20    summary judgment motion. *See Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015); *Block v. City*

21

22    [1] In his opposition, Mr. Wright also refers vaguely to a claim that Defendants' rejection of his
    mail was done in retaliation for the complaints and lawsuits he brought with regard to his
23    visitation rights. This claim is not contained in the Amended Complaint (Dkt. 18), and as
    discussed further herein, the undersigned recommends that it not be considered at this late stage
    in the litigation.

REPORT AND RECOMMENDATION - 3

1    *of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001); *Eisenstadt v. Centel Corp*., 113 F.3d 738,

2    742-43 (7th Cir. 1997).

3          To the extent Defendants seek to strike material from these declarations on the grounds of

4    relevance or materiality, the motion to strike is denied. The Court is able to assess the weight of

5    any such statements in determining whether a genuine issue of material fact has been raised that

6    would preclude entry of summary judgment. Given the withdrawal by Mr. Wright of his

7    visitation claims, much of the declarations submitted by him are now largely irrelevant and

8    unnecessary to the ultimate disposition of his remaining claims. The Court references those

9    declarations only in the context of the remaining claims and did not rely on any inadmissible

10   evidence for substantive purposes. The Court turns to specific objections to portions of the

11   declarations.

12         <u>Wright Declaration, Paragraph 11</u>. Defendants move to strike that portion of paragraph

13   11 of Mr. Wright's Declaration stating that Roger Sime, "often sorts (the public records requests)

14   and then sends me the documents" that [Mr. Wright] needs to defend against "false charges of

15   child abuse which were circulating throughout the prison administration." Defendants contend

16   that in these statements, Mr. Wright is testifying to the actions and motivations of Mr. Sime.

17         However, Mr. Wright can testify to facts upon which he has personal knowledge and "his

18   need to defend" is based on his motivation and not that of Mr. Sime. Whether Mr. Wright has

19   personal knowledge that Mr. Sime "often sorts" though the records is of no relevance to the

20   issues at hand. Thus, the motion to strike the language in Paragraph 11 is **denied**.

21         <u>Wright Declaration, Paragraphs 20 and 27</u>. Defendants move to strike language in

22   paragraphs 20 and 27 of Mr. Wright's Declaration, in which he describes the contents of the

23   documents in the rejected mailings. Because Mr. Wright never saw the contents of the mailings,

Defendants argue that his knowledge of this information would necessarily have been based on hearsay statements about the documents from Mr. Sime. The motion to strike this language is **granted**.

Sime Declaration, Paragraph 4. In paragraph 4 of his declaration, Mr. Sime indicates that he spent money to ship documents to Mr. Wright. Defendants move to strike this statement because it is not relevant. The motion to strike is **denied**. Defendants also move to strike the remainder of Paragraph 4, where Mr. Sime states "Matt Wright told me…" on the grounds that these statements are hearsay. The motion to strike this language is **granted**.

Sime Declaration, Paragraph 5. Defendants move to strike that portion of paragraph 5 of Mr. Sime's declaration stating "I heard …", on the ground that such a statement relies on inadmissible hearsay. The motion to strike this language is **granted**.

STATEMENT OF FACTS

A.    Previously Adjudicated or Withdrawn Claims

Facts relating to Mr. Wright's visitation with his children, investigations regarding visitation, and his criminal conviction record will not be repeated here as Mr. Wright's claims related to these facts were previously adjudicated or have been withdrawn. Those facts are set forth in prior decisions in this case and in *Wright v. Washington*, Cause No. 18-0927-RAJ, 2020 WL 3105723 (W.D. Wash. Mar. 10, 2020), *adopted by* 2020 WL 3103893 (W.D. Wash. June 11, 2020); *see also Wright*, 2020 WL 3105723, at *12 (finding that claims are frivolous). Facts relating to Mr. Wright's privacy, due process, and negligence claims are set forth in this Court's dismissal of claims against Defendant Hainline, the State of Washington, and the Department. Dkt. 25, 43.

B.    <u>Facts Relating to Public Records Requests and Injunction</u>

In early 2018, Mr. Wright submitted several public records requests to the Department and several other governmental agencies (*i.e.*, police and sheriff departments, DSHS). Mr. Wright made these requests to obtain records to support his claims against DOC, defend against accusations and threats made by his ex-wife, and to provide evidence to correct his criminal corrections record. Dkt. 50, Declaration of Matthew Wright, ¶¶ 8-9. Mr. Wright requested that the records be sent to his sister, Theodora Wright, and to his friend, Roger Sime, who would then mail the records to him. *Id.*, Dkt. 52, Sime Dec., ¶¶ 3-4; Dkt. 51, Declaration of Theodora Wright, ¶¶ 5-8.

In response to Mr. Wright's "hundreds of public records requests" to the Department over several years, "including ninety-four in November and December 2018 alone," the Department sought a permanent injunction pursuant to RCW 42.56.565 ("PRA"). Dkt. 47-1, Exhibit 8, p. 214, at Findings of Fact Nos. 1 and 2; *Washington State Department of Corrections v. Matthew Wright,* Thurston County Cause No. 18-2-06402-34. RCW 42.56.565 permits the enjoinment of requests upon certain findings, such as that the requests were intended to harass and intimidate an agency and its staff. The case was filed in Thurston County Superior Court. A temporary restraining order was entered *ex parte* on December 27, 2018. Dkt. 47, Counsel Declaration, Exhibit 6.

On January 11, 2019, the state court issued a preliminary injunction and on March 22, 2019, issued a permanent injunction. Dkt. 47, Counsel Declaration, Exhibits 6 & 8. At that time, "Mr. Wright ha[d] 89 open requests with the Department and ha[d] 40 or 50 already drafted for submission at the conclusion of these proceedings. Wright currently has the highest number of requests open with the Department for any individual." *Id.*, pp. 214-215. The court also found

that the continued processing of Mr. Wright's "harassing requests came at a cost to the Department" and that the Department has "spent approximately 1,200 hours processing" his requests to date. *Id.*

In the March 22, 2019 permanent injunction, the state court found that the request and possession of Mr. Wright's records requests that are sensitive in nature (i.e., containing personal information on specific incarcerated individuals, phone activity to particular numbers, and information regarding Mr. Wright's sister or ex-wife), "likely threaten the safety and security of Department facilities and individuals" because "knowledge of personal details such as convictions, personal relationship, classification information, or other personal characteristics can allow individuals to be manipulated or strong armed." *See* Dkt. 47-1, Exhibit 8, p. 215.

Pursuant to the March 22, 2019 permanent injunction, Mr. Wright is prohibited from submitting (or requesting or soliciting or directing others to submit) more than two requests per calendar year (which may only seek two categories per request) for the duration of his incarceration absent prior court approval. Mr. Wright is not prevented from inspecting his own DOC central file two times per year (six months apart) or from submitting the two requests per calendar year. In addition, the permanent injunction order held:

> Wright may not receive any further response to any Public Records requests submitted by him to the Department, including requests that he has previously submitted to the Department. The Department has no obligation to respond to any Wright's pending public records requests.

Due to continued abuse of the PRA (Mr. Wright submitted a request seeking, among other things, emails of 20,000 individuals, a search all Department cell phones and all prisons where he was incarcerated), the Department sought additional relief under RCW 42.56.565. A second permanent injunction was entered on December 6, 2019. Dkt. 47, Counsel Declaration, Exhibit 9.

REPORT AND RECOMMENDATION - 7

1    During these injunction proceedings, Mr. Wright was receiving mail from Mr. Sime,

2   which contained documents Mr. Sime received in response to Mr. Wright's public records

3   requests. Dkt. 48, Declaration of Tammy O'Reilly, ¶ 4; Exhibit 10; Wright Deposition

4   Transcript, at 24:16-27:2. Mr. Wright was having documents responsive to his public records

5   requests sent to Mr. Sime who in turn, printed the documents and sent them to Mr. Wright. *Id.*,

6   Counsel Declaration, Exhibit 10, Wright Deposition Transcript, at 24:16-27:2. The mail

7   rejections at issue occurred in January, August, and September 2019. Mr. Wright maintains that

8   the state court injunctions did not specifically prohibit him from receiving responses to public

9   records requests which were submitted prior to entry of the injunctions. Dkt. 49, pp. 5-7.

10   C.    Facts Relating to Mail Rejections and Exhaustion

11    The Department has a specific process for appealing mail rejections. For incoming mail

12   that is rejected, that process involves an appeal to the Superintendent of the facility, and then a

13   subsequent opportunity to appeal to a Correctional Program Manager at Department

14   Headquarters. Dkt. 48, O'Reilly Decl., ¶ 8; Exhibit 1 (DOC Policy 450.100). When a piece of

15   mail is rejected, it is assigned a tracking number and the mailroom issues a mail rejection notice

16   on DOC Form 05-0525. *Id.*, ¶ 6. When the rejected mail is incoming mail, the rejection notice is

17   provided to the sender of the mail and incarcerated individual, who is the intended recipient.

18   DOC Policy 450.100 contains a list of reasons that mail is considered unauthorized. When a mail

19   rejection is completed, the mail rejection will list the number that corresponds to the reason or

20   reasons that the mail was rejected. *Id.*, ¶ 7.

21    A Mail Rejection Notice sent to an inmate contains the following information as to

22   rejected incoming mail, which is prominently displayed near the top of the rejection notice:

23        For rejected incoming mail/eMessages, the offender/sender may submit a written
         appeal request (e.g., DOC 21-473 Offender's Kite) to the mailroom sergeant

REPORT AND RECOMMENDATION - 8

> within 10 calendar days of receiving this notice. The appeal will be reviewed by the Superintendent/designee. Offenders/senders may submit a written appeal request to the mailroom sergeant for a rejection upheld by the Superintendent/ designee, which will be revised by the Headquarters Correctional Manager. Appeals received in the mail will not be accepted and will be returned to the offender.

*See e.g.*, Dkt. 48-1, p. 23. The three mail rejection notices at issue sent to Mr. Wright, contained this language. *Id.*, Ex. 2, 3, and 4.

       1.    <u>First Rejection Notice.</u>  On January 10, 2019, Defendant O'Reilly rejected incoming mail from Roger Sime to Wright for Reasons 2 and 39, and stating:

> This inbound mailing is rejected because it is not from a legal source or discovery and no redactions have been made. The content is third party sent by a private sender in response to a PD. This would be considerd [sic] under the court papers restricting PD by you or from third party.

Dkt. 48-1, Exhibit 2, p. 23 (Rejection Notice L-I-TRU-1-10-29-976).

       Wright appealed the mail rejection to the Superintendent. In upholding the rejected incoming mail, Defendant Michael Hathaway upheld the mail rejection, stating: "Per Court Order 18-2-06402-34 Injunction from Thurston County you may not receive this public disclosure." *Id.* Mr. Wright arranged for the box to be mailed back to Mr. Sime. Dkt. 48, O'Reilly Decl., ¶ 9.

       There is no evidence that Wright appealed this mail rejection notice to the HQ Correctional Manager.

       2.    <u>Second Rejection Notice</u>. On August 8, 2019, Defendant O'Reilly rejected incoming mail from Roger Sime to Wright for Reasons 26, 34, 39, and stating:

> This inbound mailing is rejected as the entire content (approx.. 100+pages front and back) include information relating to other inmates, their families and their families personal information related to visiting. None of the content has been redacted. None of the content is related to the sender or Inmate Wright. This is a PD and information includes personal correspondence from other inmates family members including hand written and emails pertaining to visiting and decision

1

2

> reasoning with HQ staff. The policy pages that were included are send inbound to
> you with a copy of this notice.

3

4

Dkt. 48-1, Exhibit 3, p. 24 (Rejection Notice LITRU8-8-19). Wright appealed the mail rejection

to the Superintendent. In upholding the mail rejection, Defendant Hathaway stated: Information

about other offenders, and you have a court order preventing you from getting PPU requests." *Id.*

5

6

It does not appear that Mr. Wright arranged for any disposition of this mailing. Dkt. 48, O'Reilly

Declaration, ¶ 11.

7

8

There is no evidence that Wright appealed this mail rejection to the HQ Correctional

Manager.

9

10

3.    <u>Third Mail Rejection</u>

On September 20, 2019, Defendant O'Reilly rejected incoming mail from Roger Sime to

11

Mr. Wright for Reasons 1, 24, 18, and stating:

12

13

14

> Contains multiple or similar copies/photocopies of the same photograph,
> document, and/or publication/subscription, in whole or part. Contains publications
> or documents that have been altered (e.g. pages torn/removed,
> additional/unnecessary markings), other than legal mail sent from a legal
> entity/agency.

15

16

> This inbound is rejected as it is from a third party not redacted and is alterd [sic]
> documents in duplicate form.

17

Dkt. 48-1, p. 27, Exhibit 4. Defendant O'Reilly explains that she rejected the mailing for

18

multiple reasons, including that the mailing contained a large number of duplicative and similar

19

copies, unredacted documents, pages of lined notebook paper cut-out, and typed half sheets taped

20

on them in pieces. *Id.*, ¶ 12.

21

Mr. Wright appealed this mail rejection to the Superintendent. The rejection was upheld

22

by the Superintendent/designee on September 27, 2019. *Id.* Mr. Wright appealed this mail

23

rejection to HQ. At this level the HQ Correctional Manager upheld the mail rejection as follows:

REPORT AND RECOMMENDATION - 10

> Concur with rejection of the public disclosure material. You are prohibited per a court order from requesting/receiving public disclosure material, including sent from a third party. The rejection of one copy of a JPay message and 45 pages of a transcript pertaining to a lawsuit of yours has been overturned and will be forwarded to you by Mailroom staff, for a total of 46 pages.

*Id.* Mr. Wright did not arrange for disposition of the remaining items to be mailed out. *Id.*

Defendant O'Reilly states that, even without the court injunctions restricting Mr. Wright's public records requests, she would have rejected these three mailings because they contained many pages of documents that contained the names and other information about other inmates or private citizens. *Id.*, ¶ 14.

<u>STANDARDS OF REVIEW</u>

A.    <u>Summary Judgment</u>

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether a particular fact is material and whether there is a genuine dispute as to that material fact left to be resolved. Fed. R. Civ. P. 56(c).

If the nonmoving party bears the burden of proof at trial, the moving party is not required to bring forth any additional evidence in support of the motion if the motion demonstrates the absence of genuine disputes of material facts and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Where there is a complete failure

1    of proof concerning an essential element of the non-moving party's case, all other facts are

2    rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Id.* at 323.

3    B.    Section 1983

4    To set forth a *prima facie* case under § 1983, a plaintiff must establish a deprivation of a

5    federally protected right. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The particular harm

6    complained of must be scrutinized in light of specifically enumerated rights. *Id.* That a plaintiff

7    may have suffered harm, even if due to another's negligent conduct, does not itself demonstrate a

8    violation of constitutional protections. *See*, *e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347 (1986)

9    ("[W]here a government official is merely negligent in causing the injury, no procedure for

10    compensation is constitutionally required.").

DISCUSSION

11

12    A.    Res Judicata

13    Defendants contend that res judicata applies to bar re-litigation of state and federal claims

14    involving Mr. Wright's visitation through January 2019, which claims were previously dismissed

15    as frivolous. Dkt. 46, pp. 9-10; *see Wright v. Washington*, Cause No. 18-0927, 2020 WL

16    3105723 (W.D. Wash. Mar. 10, 2020), *adopted by* 2020 WL 3103893 (W.D. Wash. June 11,

17    2020). In response, Mr. Wright represents that he "is not pursuing his previous legal claims

18    related to visitation in the instant matter." Dkt. 49 at 20.

19    The Court notes that Mr. Wright's due process claim were premised both on his right to

20    visitation and a failure to protect. To the extent Mr. Wright contends his withdrawal of his

21    visitation claims does not cover that portion of his due process claim premised on a failure to

22    protect, the claim is nonetheless barred because it was never exhausted. The Court previously

23    found in Case No. 18-0927 that this claim was not exhausted (*see also* Dkt. 47, Exhibit 5,

Caldwell Decl., Ex. 1, ¶ 6.3 (Wright only pursued three grievances between January 1, 2016 and June 12, 2019, none of which raised a failure-to-protect claim).

Plaintiff has produced no evidence that the claim has since been exhausted and therefore, the claim may be dismissed on this basis as well. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006) (Exhaustion is required by the PLRA to bring this constitutional claim because incarcerated individuals are required to properly exhaust their administrative remedies before bringing lawsuits about prison conditions. 42 U.S.C. § 1997e(a)).

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Mr. Wright's state and federal due process and negligence claims involving Wright's visitation through January 2019 be granted. *See* Dkt. 18 (Amended Complaint) (First and Fifth Claims for Relief).

B.    <u>Personal Participation – Defendants Fredericks and Hopkins</u>

A plaintiff must also allege facts in his § 1983 complaint showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). To satisfy the causation requirement, a plaintiff must demonstrate that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold*, 637 F.2d at 1355 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). A defendant cannot be held liable under § 1983 solely on the basis of the individual's supervisory responsibility or position. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691-694 (1978). Rather, a plaintiff must allege that a defendant's own conduct violated the plaintiff's civil rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-90 (1989).

1    Defendants argue that Mr. Wright has failed to establish the personal participation of

2    Defendants Hopkins and Frederick in his First Amendment mail rejection claim as Mr. Wright

3    alleged only that Defendant Hopkins passed the mail rejection appeal to Defendant Hathaway

4    and that Defendant Fredericks was an interim Department grievance program manager.

5    Mr. Wright did not respond to this portion of Defendants' motion for summary judgment

6    in any significant way and provided no evidence to show that either Defendant Hopkins or

7    Defendant Fredericks personally participated in violating his First Amendment rights.[2]

8    Accordingly, the undersigned recommends that Defendants' motion for summary judgment for

9    lack of personal participation by Defendants Hopkins and Fredericks be granted.

10   C.    Retaliation Claim

11   In his opposition to Defendants' motion for summary judgment, Mr. Wright argues that

12   Defendants withheld his mail because it contained material related to his ongoing child custody

13   and visitation legal actions and that they did so deliberately to punish him for the previous

14   lawsuits he brought against the Department and DOC employees. *See e.g.*, Dkt. 49, pp. 3, 13.

15   Mr. Wright's original complaint was filed in September 2019 and was amended in

16   February 2020 in response to Defendant Hainline's motion to dismiss. *See* Dkt. 1, 18. Mr.

17   Wright did not assert a retaliation claim in either complaint. At no time has Mr. Wright sought to

18   amend his complaint to allege a claim of retaliation and at this late stage, he is not permitted to

19   do so without the Court's leave. The Ninth Circuit has recognized that "a party may not

20   circumvent Rule 8's pleading requirement by asserting a new allegation in response to a motion

21

22

23   [2] The Court also notes that mail rejections are not part of the grievance process and in any event, denial of a grievance is generally not sufficient to establish personal participation. *See*, *e.g.*, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).

for summary judgment. *Ward v. Clark Cty.*, 285 Fed. Appx. 412 (9th Cir. 2008); *Wasco Prods., Inc. v. Southwall Techns., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (A party cannot generally raise new claims and legal theories at the summary judgment stage).

In addition, Mr. Wright has failed to state a viable claim of retaliation as there is no constitutional right of access to government information. *See e.g.*, *Brennan v. Aston*, No. 17-cv-1928-JCC, 2019 WL 5225047 at *6 (citing *McBurney v. Young*, 569 U.S. 221, 232 (2013) ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws."); *Houchins v. KQED*, 438 U.S. 1, 15 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.").

Because Mr. Wright does not have a First Amendment right to request public records, his retaliation claim fails as a matter of law. In addition, Mr. Wright does not allege or demonstrate the fundamental elements of a retaliation claim, *i.e.*, (1) that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *See, e.g.*, *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Mr. Wright also fails to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

For these reasons, the undersigned recommends that Mr. Wright's attempt to raise an insufficient claim of retaliation at this stage in the litigation be denied.

REPORT AND RECOMMENDATION - 15

D.    <u>Failure to Exhaust January 2019 and August 2019 Mail Rejections</u>

Mr. Wright contends that Defendants O'Reilly, Frederick, Hathaway, Hopkins, and Schneider violated his First Amendment rights by refusing to allow him to receive public disclosure documents mailed to him in response to his public records requests because they incorrectly interpreted a court order and insisted that the order prohibited him from receiving public disclosure documents. Dkt. 18, ¶ 76. At issue are three mail rejections, but the evidence reflects that Mr. Wright failed to properly exhaust the first two mail rejections because he did not complete the standard Department process for appealing mail rejections.

As previously noted, the Department has a specific process for appealing mail rejections. For incoming mail that is rejected, that process involves an appeal to the Superintendent of the facility, and then a subsequent opportunity to appeal to a Correctional Program Manager at Department Headquarters. O'Reilly Declaration, at ¶ 8. The proper process for exhausting mail rejections is through the Department's mail rejection process. *See*, *e.g.*, *Donley v. Fraker*, No. 11-5995 RBL/KLS, 2012 WL 2395879, at *4 (W.D. Wash. April 30, 2012), *adopted by* 2012 WL 2390011 (W.D. Wash. June 25, 2012); *Hargrove v. Wash. State Dep't of Corr.*, No. 10-0363-RBL-KLS, 2011 WL 1980540, at *6-7 (W.D. Wash. May 2, 2011) (dismissal for failure to exhaust by appealing mail rejection to DOC HQ), *adopted by* 2011 WL 1979919 (May 2, 2011), *and subsequently affirmed by Hargrove v. Wash. State Dep't of Corr.*, 488 Fed. App'x 268 (9th Cir. 2012).

Evidence in this case indicates that Mr. Wright did not appeal the January 2019 or the August 2019 mail rejections to Department Headquarters and therefore, failed to properly exhaust his claims related to those rejections. Mr. Wright argues that "by looking at the mail policy alone [he] would not know how to pursue an appeal for any mail rejection" and because

REPORT AND RECOMMENDATION - 16

he cannot file a grievance for rejected mail, he "must rely on a vague mail policy that does not allow him to make direct appeals to decision-makers." Dkt. 49 p. 10. Mr. Wright also argues that the appeal process was unavailable and that he attempted to appeal the January and August rejections by sending kites and kiosk messages to the mailroom sergeant but did not receive any response or decision from headquarters. Dkt. 50, Wright Decl., ¶¶ 13-14, 20. Mr. Wright claims he did not retain a copy of the kites, but because the rejection form "does not offer any other way to appeal rejections to headquarters," Mr. Wright argues that sending a kite was the only way he could be expected to pursue the established mail rejection appeals procedure. Dkt. 49, p. 11.

As noted by Defendants, there is a kiosk message dated January 24, 2019, but in that message, Mr. Wright merely asked what the mail rejection was "mailed out in." Dkt. 47, Decl. of Counsel, Exhibit 1. As to the August mail rejection, Defendants concede there was an extended discussion between Defendant O'Reilly and Mr. Wright about the rejection. Dkt. 50-1, p. 21. Defendant O'Reilly referred Mr. Wright to CPM Hathaway, who had reviewed the rejection at the Superintendent's level on August 16, 2019. *Id.*, p. 21. Although there is further discussion about the basis for the rejection on that same day, there is no evidence that Mr. Wright followed-up on these discussions or ever clearly expressed an intent to appeal to Department Headquarters.

Mr. Wright argues however, that the mail rejection appeal process is unavailable because (1) the process in the policy differs from what is contained on the mail rejection form; (2) an inmate cannot know how to appeal by looking at the rejection form; (3) there is no mandatory language in the mail policy requiring an appeal; and (4) an inmate cannot file grievances for rejected mail. None of these arguments present a persuasive reason to conclude that the mail rejection policy was unavailable.

The first two arguments are not factually supported as the mail rejection notice clearly states:

> For rejected incoming mail/eMessages, the offender/sender may submit a written appeal request (e.g., DOC 21-473 Offender's Kite) to the mailroom sergeant within 10 calendar days of receiving this notice. The appeal will be reviewed by the Superintendent/designee. Offenders/senders may submit a written appeal request to the mailroom sergeant for a rejection upheld by the Superintendent/designee, which will be reviewed by the Headquarters Correctional Manager.

Dkt. 48-1, p. 27. This language is mirrored in DOC's mail policy:

> Offenders/senders may submit a written appeal request to the Mailroom Sergeant for a rejection upheld by the Superintendent/designee, which will be reviewed by the Headquarters Correctional Manager.

*Id.*, p. 12.

Mr. Wright's contention that the appeals process lacks mandatory language is also rejected as any appeal is left to his discretion and in any event, because exhaustion is required by federal law, appeal is mandatory prior to filing a federal lawsuit. Finally, Mr. Wright's claimed confusion in the mail rejection appeals process and his claim that the appeals process is not accessible, are simply not credible as Mr. Wright took all appropriate steps to appeal the third mail rejection to DOC Headquarters.

There is no evidence that Mr. Wright exhausted the first two mail rejections by appealing them to Department Headquarters. As Mr. Wright has failed to create a genuine issue of material fact that he exhausted these mail rejections, the undersigned recommends that Mr. Wright's claims related to the January and August mail rejections be dismissed without prejudice for failure to exhaust.

E.    First Amendment – September 2019 Mail Rejection

Inmates retain those First Amendment rights that are not inconsistent with their status as a prisoner or with the legitimate penological objectives of the correctional system. *Prison Legal*

REPORT AND RECOMMENDATION - 18

1   *News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners'*

2   *Labor Union, Inc.*, 433 U.S. 119, 129 (1977). This First Amendment protection is implicated by

3   restrictions on correspondence and receiving of publications. *Thornburgh v. Abbott*, 490 U.S.

4   401, 407 (1989); *see Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004). Without a

5   showing of some kind of pattern and practice, isolated incidents of the erroneous screening of

6   regular mail do not typically raise a constitutional issue. *See Nixon v. Secretary Pennsylvania*

7   *Dep't of Corr.*, 501 Fed. App'x 176 (3d Cir. 2012); *Davis v. Goord*, 320 F.3d 346, 351-52 (2d

8   Cir. 2003); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989); *see also Ahlers v.*

9   *Rabinowitz*, 684 F.3d 53, (2d Cir. 2012) (similar conclusion with respect to civilly committed

10  individual).

11       Summary judgment on Mr. Wright's First Amendment claim is appropriate because he

12  has failed to raise a genuine dispute of material fact as to whether the rejection of his incoming

13  mail was not reasonably related to legitimate penological interests. *See Turner v. Safley*, 482

14  U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (a prison regulation that "impinges on

15  inmates' constitutional rights" is valid "if it is reasonably related to legitimate penological

16  interests"); *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (*Turner* analysis applies

17  to facial overbreadth and vagueness challenges to regulation of prison mail, in addition to as-

18  applied challenges).

19       When inmate mail is restricted, courts consider whether the restriction is reasonably

20  related to a legitimate penological interest. The *Turner* decision provides four factors to guide

21  reviewing courts in determining the reasonableness of a regulation. "First, there must be a 'valid,

22  rational connection' between the prison regulation and the legitimate governmental interest put

23  forward to justify it." *Id*. (citations omitted). A second factor is "whether there are alternative

1    means of exercising the rights that remain open to prison inmates." *Id*. at 90. The third

2    consideration is the "impact accommodation of the asserted constitutional right will have on

3    guards and other inmates, and the allocation of prison resources generally." *Id*. Last, the

4    "absence of ready alternatives is evidence of the reasonableness of the regulation." *Id*.

5        As correctly noted by Defendants, the mailing at issue contained public documents in

6    response to a public records act request and there is no constitutional right to receive public

7    documents. However, Mr. Wright clearly has a constitutional right to receive mail in general and

8    it is this right that is analyzed here.

9        At issue is the September 20, 2019, mail rejection by Defendant O'Reilly. Mr. Wright

10    was advised in the mail rejection notice that this mailing was rejected for various reasons,

11    including that it contained many duplicative and similar copies, altered documents, and

12    unredacted documents. Dkt. 48-1, p. 27, Exhibit 4. The rejection was upheld, in part, on appeal

13    to the HG Correctional Manager based on the state court injunction prohibiting Mr. Wright from

14    requesting or receiving public disclosure material (including that sent by a third party). *Id.* The

15    rejection was overturned as to a JPay message and 45 pages of a transcript relating to one of Mr.

16    Wright's lawsuits and this material was given to him. *Id.*

17        Mr. Wright first argues that there was no basis for restricting documents from

18    "departments other than the DOC." Dkt. 49. However, there is no admissible evidence indicating

19    that material from other agencies was included in the January mailing. Even if the records came

20    from other agencies, the Department could reject the mailing so long as the rejection was

21    reasonably related to legitimate penological interests. The mail rejection notice and Ms.

22    O'Reilly's declaration indicate that the September 2019 incoming mail was rejected because it

23    contained duplicative, altered, and unredacted documents. Dkt. 48, O'Reilly Decl., Exhibit 1, p.

REPORT AND RECOMMENDATION - 20

27, Exhibit 4. Defendant O'Reilly states that she would have rejected the mailing regardless of the court injunction, because many pages contained the names and other information about other inmates or private citizens. *Id.*, ¶ 14. These concerns alone support her rejection of the mail and serve legitimate penological interests. Moreover, at the time of the September 2019 mail rejection, the May 22, 2019 permanent injunction had been in place for more than five months and the injunction prohibited Mr. Wright from requesting or receiving any further responses to his requests (except for 2 requests per year, which are not implicated in the facts presented in this case). In issuing that permanent injunction, the state court pointed out the danger implicit in the possession of unredacted documents containing personal information on specific incarcerated individuals, phone activity to particular numbers, and information regarding Mr. Wright's sister or ex-wife. The state court noted that possession of this type of information will "likely threaten the safety and security of Department facilities and individuals" because "knowledge of personal details such as convictions, personal relationship, classification information, or other personal characteristics can allow individuals to be manipulated or strong armed." *See* Dkt. 47-1, Exhibit 8, p. 215.

Mr. Wright appears to argue that so long as the state court injunction did not bar a specific public records request, the Department could not reject the mailing based on an incorrect or unreasonable interpretation of the language of the injunction. However, the Department can reject incoming mail so long as the rejection is reasonably related to legitimate penological interests. Here, safety and security issues were implicated by the inclusion of unredacted materials in the mailing. *See also*, *Livingston v. Cedeno*, 164 Wn.2d 46, 186 P.3d 1055 (2008), a case relied on by Mr. Wright, in which the Washington Supreme Court recognized that the Department has "broad discretion to deny entry of any materials it determines may threaten

legitimate penological interests, without exception for public records. *Livingston*, 164 W.2d at 52.

Mr. Wright also claims that he had no alternative avenues for viewing the information, but this argument is not well founded. Mr. Sime could have redacted any sensitive information contained in the documents before mailing them to Mr. Wright. In addition, Mr. Wright was represented by an attorney in his dissolution proceedings (*see* Dkt. 18, p. 8) and the documents, which Mr. Wright maintains was critical to hearings in those proceedings, could have been sent to his attorney for use in those proceedings.

Evidence presented reflects that the September 2019 mail was rejected for security reasons related to altered and unredacted documents. Mr. Wright provides no evidence to the contrary. The rejection was upheld on appeal based on the state court injunction, which prohibited Mr. Wright from receiving "any further response to any Public Records requests submitted by him to the Department, including requests that he has previously submitted to the Department." The injunction also relieved the Department of any further obligation to respond to any pending public records requests, "which is a legitimate penological concern."

DOC staff reasonably determined that the September 2019 mailing presented security concerns. It is axiomatic that rejecting mail that violates a court order – particularly a court order intended to protect the safety and security of DOC staff, facilities, and private individuals – reasonably advances legitimate correctional goals. In addition, there is no evidence of any lesser available alternative to rejecting the mail.

Accordingly, it is recommended that Defendants' motion for summary judgment on Mr. Wright's First Amendment claim as to the September 2019 mailing be granted.

REPORT AND RECOMMENDATION - 22

F.    <u>Claim of Respondeat Superior – State of Washington</u>

In his amended complaint, Mr. Wright asserts as his Eighth Claim for Relief, a claim that the State of Washington is liable for the conduct of its employees. Respondeat superior is merely a theory of liability and is not an independent tort. Because Mr. Wright has failed to demonstrate a violation of his First Amendment rights (and the dismissal and/or withdrawal of his other claims), any corresponding theory of respondeat superior liability against the Department or the State of Washington must also be dismissed.

G.    <u>Request for Finding of Frivolousness/Malicious</u>

A case is frivolous if it is "of little weight or importance; having no basis in law or fact." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (citations omitted). A separate standard for maliciousness is not well established but includes an action that "is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Abdul-Akbar v. Dep't of Corr.*, 910 F. Supp. 986, 999 (D. Del. 1995); *see also* 28 U.S.C. § 1915(g)[3] and RCW 4.24.430.

Although this case was removed from state court, a finding of frivolousness or maliciousness would count as a strike under Washington's RCW 4.24.430, and could potentially count as a federal strike in the future. Mr. Wright argues that a finding of frivolousness and maliciousness is not warranted as his claims are extremely unique with little to no case law on point and the novel questions he presents in his First Amendment claim do not have obvious answers.

---

[3] Pursuant to 28 U.S.C. § 1915(g), a prisoner may not proceed in forma pauperis in a civil action if he or she has, on three or more prior occasions, brought civil actions or appeals that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

REPORT AND RECOMMENDATION - 23

The Court disagrees with Mr. Wright's assessment as many of his claims were dismissed at the motion to dismiss stage based on binding case law, and the bulk of his remaining claims relate to visitation and are based on the same facts (and in some instances, the same law) as were previously raised and deemed frivolous in *Wright v. Washington*, Cause No. 18-0927-RAJ. The remaining First Amendment claim as to Mr. Wright's incoming mail is not unique and in fact, two of those claims were brought prematurely before Mr. Wright exhausted his administrative remedies. Mr. Wright's argument that those administrative remedies were either too vague or not available to him are not well taken and are very similar to tactics employed by Mr. Wright in the 2018 case (belatedly asserting threats of harm and claiming that his failure to exhaust should be excused). The Court is also mindful that, although Mr. Wright abandoned his visitation claims, he did so only in the face of Defendants' summary judgment and after Defendants expended time and resources in litigating these issues.

Accordingly, the Court recommends a finding that the case is frivolous as the claims asserted have no apparent basis in law or fact. However, given the timing of the Court's prior finding of frivolousness (after the filing of this case) and non-visitation related claims raised in this case, the Court declines to recommend a finding of maliciousness.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 12, 2020.** The Clerk should note the matter for **October 14, 2020**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days

REPORT AND RECOMMENDATION - 24

after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed seven (7) pages.  The failure to timely object may affect the right to appeal.

DATED this 18th day of September, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 25